A10A1693, A10A1694. GARNER v. REDWINE et al.;
and vice versa.
(709 SE2d 569)

SMITH, Presiding Judge.

In these consolidated appeals, we must determine whether the trial court properly interpreted a trust provision in an amendment to the Hill Reagan Redwine Revocable Trust. For the reasons set forth below, we reverse.

The record shows that on July 28, 2009, Elizabeth Redwine Garner filed a petition for declaratory judgment against Charles Redwine, William Redwine II, and Wanda Redwine ("the Redwines"). In the petition, Garner sought a declaration of her rights, in part, with regard to a third amendment to her father's revocable trust. Specifically, she asserted that she was entitled to the contents of her father's personal residence based upon this amendment. At the time she filed her petition, the trustee was in ill health and had not yet distributed any of the trust's assets. Two days after Garner filed her petition, the trustee filed his own petition for declaratory judgment in the same court seeking guidance with regard to the meaning of the third amendment. He also sought approval to resign as trustee due to "substantial health issues."

One week later, the trustee entered into a settlement agreement with the Redwines in which he agreed to distribute the trust proceeds, including the personal contents of their father's home, to the Redwines in exchange for their release of all their claims against him. The settlement agreement also provided, however, that the Redwines were obligated to "[h]old and not distribute or convey to a third party any of the personal property" at issue "until the resolution by agreement, decree or appeal of the civil action filed by [Garner]. . . ." On September 16, 2009, the superior court issued a temporary restraining order and interlocutory injunction in the case filed by Garner prohibiting the Redwines from damaging, selling, removing, conveying, or transferring the contents of the father's

home.

The third amendment at issue in this case provides that the trust became irrevocable upon the father's death. At the time the third amendment was executed, the trust was "worth far in excess of $30 million." Article 7 of the trust, titled "Distribution of Principal and Income After my Death," contains the following relevant provisions:

**7.1.1** **Specific Testamentary Gifts**. *The Trustee shall divide property with a value at the date of distribution of EIGHT MILLON ($8,000,000.00) DOLLARS into eight (8) separate and equal shares to be distributed as follows:*

7.1.1.1 *William . . . Redwine II. The trustee shall distribute four (4) such shares to William . . . Redwine, . . .*

7.1.1.2 *Charles . . . Redwine II. The Trustee shall distribute two (2) such shares to Charles . . . Redwine II. . . .*

7.1.1.3 *Wanda . . . Redwine. The Trustee shall distribute two (2) such shares to Wanda . . . Redwine. . . .*

**7.2** **Trust Remainder.** The Trustee shall divide and distribute all of my Trust Estate that remains after allowing for (i) the specific testamentary gifts provided under subsection 7.1.1 above, and (ii) the payment of estate taxes as provided under Section 6.2 above (the "Trust Remainder") as follows:

**7.2.1 First TWO MILLION ($2,000,000) DOLLARS of the Trust Remainder.** The Trustee shall divide and distribute property with the value at the date of distribution of **TWO MILLION ($2,000,000) DOLLARS of the Trust Remainder** to Hill . . . Redwine II and Elizabeth . . . Garner, in equal shares. . . . I further direct that all of the contents of my personal residence be distributed to Elizabeth . . . Garner, as part of her share of this testamentary gift, with the value of the personal contents of my residence deducted from the share received by Elizabeth . . . Garner, if she elects to

160

receive the personal contents of my personal residence.

After the distribution in Article 7.2.1, the trust remainder provisions provided instructions for the distribution of another $20 million.

The parties' father died on March 9, 2009. The record shows without dispute that at the time of the settlement agreement and distribution, the trust assets were insufficient to pay $8 million under Section 7.1.1, taxes, and administrative costs.

Garner and the Redwines filed cross-motions seeking summary judgment in their favor, and the trial court issued a written order concluding that the father "intended [Garner] to receive the contents of his personal residence contingent upon the full payment of the specific testamentary gifts provided under subsection 7.1.1 and the payment of debts, taxes and expenses of administration as provided under Section 6.2." It then concluded that genuine issues of fact remained as to whether sufficient money existed "to fund the specific bequests in subsection 7.1.1 as well as pay the debts, taxes and expenses of administration as provided under Section 6.2 of the trust." It therefore denied Garner's motion for summary judgment in her favor, and granted the Redwines' motion, in part.

In Case No. A10A1693, Garner asserts the trial court erred by concluding that the specific bequest of the personal contents was contingent upon the payment of the general gift of $8 million to her brothers, taxes, and trust administration. In Case No. A10A1694, the Redwines assert that the trial court erred by concluding that a genuine issue of fact exists with regard to whether the trust had funds sufficient to cover the $8 million bequest, taxes, and trust expenses.

## Case No. A10A1693

1. The Redwines seek to dismiss Garner's appeal based upon their contention that the trial court lacked jurisdiction to enter a declaratory judgment. According to the Redwines, the settlement between them and the trustee removed the issue of uncertainty over Garner's right to the personal contents. We disagree.

Any person interested as a legatee, heir, or beneficiary "may have a declaration of rights or legal relations . . . and a declaratory judgment . . . [t]o determine any question arising in the administration of the estate or trust, including questions of construction of wills and other writings." OCGA § 9-4-4 (a) (3). "This statute is to be liberally construed and administered so as to 'afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations. . . .' OCGA § 9-4-1." (Citation and punctuation omit-

ted.) *Sinclair v. Sinclair*, 284 Ga. 500, 501 (1) (670 SE2d 59) (2008). In this case, both the settlement and the trial court's temporary restraining order maintained the status quo with regard to the personal contents and preserved this issue for a declaration of the parties' respective rights. We therefore deny this portion of the Redwines' motion to dismiss this appeal.

2. The Redwines argue that this appeal also should be dismissed because the trustee was a necessary party omitted from Garner's declaratory judgment action. We cannot dismiss on this ground because the record contains no ruling by the trial court on any motion to dismiss based upon a failure to join a necessary party. "Appellate courts exist to review asserted error but where the defendant makes no objection or obtains no ruling of the trial court, the contended problem cannot be made the basis of appellate review as there is no ruling to review." (Citation omitted.) *Sanders v. State*, 179 Ga. App. 168, 169 (2) (345 SE2d 677) (1986).

3. The Redwines contend Garner's suit should be precluded by a previous consent decree entered in another action. We find no merit in this claim because the record shows that this consent decree precludes Garner from contesting the validity of the third amendment to her father's trust. It does not preclude her from seeking guidance as to its meaning and construction.

4. Garner asserts that she is entitled to summary judgment in her favor based upon the Georgia Supreme Court's decision in *Henderson v. First National Bank of Rome*, 189 Ga. 175 (5 SE2d 636) (1939). In *Henderson*, the Supreme Court held that a specific devise of particular property was not rendered a general legacy simply because it had been placed in a residual clause. Id. at 176-182. Instead, the Supreme Court noted:

> The testator's intent is to be determined in each case from a consideration of the particular language employed. A bequest or devise of the residue of an estate is general, because such residue is not ascertainable at the time the will is made. The fact that in giving such residue the testator describes, as included in it or forming a part of it, certain specific property owned by him, does not alter the character of the residuary gift. But where the language used indicates an intention to make two distinct gifts — one of specific property and the other of the residue, the specific legacy or devise is not rendered general by the fact that there is a gift of the residue to the same person.

Id. at 180. In *Henderson*, an abatement of legacies was necessary "because of insufficiency of assets to pay all of the debts, expenses of

administration, and specific devise." Id. at 176. The clause at issue provided: "I give, devise, and bequeath to my uncle Henry Gustav Stoffregen the remainder of my estate of every kind and description, especially all my rights in and to the Woolworth Store and the alley adjoining. . . ." The Supreme Court concluded:

> If the testator, after making other particular bequests, had intended merely to constitute his uncle as his general residuary legatee, there was certainly no need to make mention of this particular property. It would have passed to him (subject to abatement if the necessity should arise) without this particular designation. When he used the word "especially," and then described this property and with careful particularity identified it by reference to the deed under which it was held and to the record of this deed, we think the testator manifestly and clearly intended that this named legatee should receive from his estate this particular property. The fact that he also made him his residuary legatee, thus assuring that he would take in addition any residuum from property not otherwise devised, does not seem to us in any way to operate against this conclusion. It can not be doubted that if in a separate item this property had been devised with the same particularity of description, it would have been a specific devise, and not a general legacy. It certainly may be segregated from the general mass of other property, and the legacy could be satisfied by delivery of the described property, and by that alone. It is our view that the intention of the testator is gratified by such a construction.

The case before us involves similar language. While the bequest was placed in a remainder clause, the settlor also "further direct[ed] that all of the contents of my personal residence be distributed to Elizabeth . . . Garner, as part of her share of this testamentary gift. . . ." The settlor's further direction that the value of the personal contents should be deducted from any remainder share collected by Garner does not render this a general bequest for purposes of abatement. This language reflects a clear intent on the part of Garner's father that Garner should receive the personal contents if she so desired.

We must therefore reverse the trial court's denial of Garner's motion for summary judgment as well as the trial court's partial grant of summary judgment to the Redwines.

*Case No. A10A1694*

The Redwines assert that the trial court erred by concluding that issues of fact existed with regard to whether the trust remainder was adequate to satisfy the $8 million bequest, taxes, administration expenses, and the bequest of the personal contents to Garner. In light of our holding in Case No. A10A1693, the Redwines' appeal in Case No. A10A1694 is dismissed as moot.

*Judgment reversed in Case No. A10A1693. Appeal dismissed as moot in Case No. A10A1694. Mikell and Adams, JJ., concur.*

DECIDED MARCH 9, 2011 —
RECONSIDERATION DENIED APRIL 7, 2011 — 

*Jeremy U. Littlefield*, for appellant.
*Millard C. Farmer, Jr.*, for appellees.